# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| Michael Jakiche, <br><br> Plaintiff <br><br> v. <br><br> Board of Regents of the University of New Mexico, Garnett S. Stokes, *in his official capacity as President of the University of New Mexico*, and Patricia W. Finn, *in her official capacity as Dean of the University of New Mexico School of Medicine*, <br><br> Defendants | No. 25-cv-01070 <br><br><br> COMPLAINT |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1. Plaintiff Michael Jakiche brings this action to obtain declaratory, injunctive, and monetary relief against Defendant University of New Mexico for employing racially discriminatory policies and procedures in administering the School of Medicine admissions program at the University of New Mexico in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.* and *Students for Fair Admissions v. President & Fellows of Harv. Coll.,* 600 U.S. 181 (2023).

## JURISDICTION AND VENUE

2. This action arises under 42 U.S.C. § 2000d *et seq.* This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

3.  Venue is proper in the District of New Mexico under 28 U.S.C. § 1391 because the events giving rise to the claims detailed herein occurred in the District of New Mexico.

## THE PARTIES

4.  Plaintiff Michael Jakiche is the son of Syrian immigrants who was rejected from the University of New Mexico School of Medicine two years in a row despite exemplary qualifications.

5.  Defendants oversee the University of New Mexico, a state university.

## STATEMENT OF FACTS

6.  Plaintiff, a New Mexico resident, was born and raised in New Mexico, graduated from Albuquerque Academy in 2020, and graduated from Arzona State University with a Bachelors degree in Biophysics in 2024 and a 3.99 undergraduate GPA.  EXHIBIT 1, ACMAS 2025 application, page 7.

7.  In March 2023, Plaintiff took an MCAT test, in which he placed in the 99th percentile in "Chemical and Physical Foundations of Biological Systems," the 82nd percentile in "Critical Analysis and Reasoning Skills," the 98th percentile in "Biological and Biochemical Foundations of Living Systems," and the 92nd percentile in "Psychological, Social, and Biological Foundations of Behavior," for an overall score of 519, which is the 96th percentile. EXHIBIT 2, AMCAS 2024 application, page 7.

8. Plaintiff included with his application many pages worth of volunteer service, research experience, and practical medical experience. AMCAS 2024 application, pages 8-14.

9. Plaintiff applied to the University of New Mexico School of Medicine during its 2023–2024 admissions cycle. As part of the application process, he paid an application fee of $275.

10. In May 2024, Plaintiff received a Post Application Advisement Summary ("2024 Advisement") from the University of New Mexico School of Medicine Office of Admissions. The 2024 Advisement states that Plaintiff received an admissions score of 86.9. The 2024 Advisement further states that the minimum score to be accepted in 2024 was 88.0, and the minimum score to make the waitlist was 80.3. EXHIBIT 3.

11. Plaintiff was therefore placed 23rd on the waitlist. *Id.*

12. Included on the 2024 Advisement was a chart listing seven potential areas in which improvement could be made. Two areas, "Increase Clinical Experience" and "Increase Volunteer and Community Service," were marked as "Low Priority." The other five areas were marked "N/A." *Id.*

13. The 2024 Advisement stated that Plaintiff's MCAT score of 519 was above the average score of applicants accepted in 2024, which was 506. *Id.*

14. The 2024 Advisement stated that Plaintiff's GPA of 3.99 was above the average score of applicants accepted in 2024, which was 3.75. *Id.*

15. The 2024 Advisement also stated that "Applicants are ranked with respect to each other according to their individual qualities as well as on the experiences and diversity that they will contribute to the entering class." *Id.*

16. In addition, the Associate Dean for Admissions, Robert Sapien MD, sent Plaintiff a decision letter stating that "In addition to academic achievement and MCAT scores, the selection of students is also based on," *inter alia*, "diversity." EXHIBIT 4.

17. The 2024 Advisement is dated May 21, 2024, which is almost a full year after the Supreme Court published its opinion in *Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.,* 600 U.S. 181 (2023) (*SFFA*).

18. *SFFA* abrogated the notion that "student body diversity is a compelling state interest that can justify the use of race in university admissions." 600 U.S. at 211 (quoting *Grutter v. Bollinger,* 539 U.S. 306, 325 (2003)). At best, *SFFA* left in place the possibility of using race in admissions in the context of "a student who overcame racial discrimination," but such a benefit would still have to be "tied to *that student's* courage and determination." 600 U.S. at 231. "In other words, the student must be treated based on his or her experiences as an individual—not on the basis of race." *Id.*

19. The 2024 Advisement's reference to "the . . . diversity that [applicants] will contribute to the entering class" is therefore outdated and illegal.

20. Plaintiff, number 23 on the waitlist, was rejected from admission since only 17 waitlisted applicants were admitted.

21. Undeterred, Plaintiff tried again, seeking admission to the 2025 entering class. In the meantime, he graduated *summa cum laude* from Barrett, the Honors College at Arizona State University, with a 3.99 GPA majoring in Biophysics. Additionally, he worked as a nurse aid at the endoscopy clinic at Southwest Gastroenterology, and as a medical scribe at Presbyterian emergency room, both of which he noted on his 2025 application. EXHIBIT 1.

22. He specifically noted that "Interacting with patients, many of who come from disadvantaged backgrounds, will give me insights into the barriers they face and inform my approach to patient care." *Id.*, page 8.

23. This time, Plaintiff was more forcefully rejected, with an admissions score of only 82.0, when the minimum score to make the waitlist was 84.0. EXHIBIT 5, Post Application Advisement Summary 2025.

24. Of the seven potential categories for improvement listed on the Post Application Advisement Summary 2025 ("2025 Advisement"), "Increase Clinical Experience" and "Increase Volunteer and Community Service" were both marked as "Low Priority," as they were on the 2024 Advisement.

25. But now, "Increase Communication Skills/Professionalism" was listed as "High Priority," where it had been listed as "N/A" on the 2024 Advisement, and "Increase Strength of Letters of Recommendations" was listed as "Low Priority," whereas it had been listed as "N/A" on the 2024 Advisement.

26. In addition, the following boxes were checked on the 2025 Advisement, but not the 2024 Advisement: "Did not communicate 'why you want to be a physician,'"

"Was not able to discuss health care issues," and "Other: Generic letters; limited knowledge of NM health care landscape/issues; shadowing and community service from 2023 and prior." These had not been flagged as issues on the 2024 Advisement.

27. The 2025 Advisement states that Plaintiff's MCAT score of 519 is greater than the average score of accepted applicants of 509; and Plaintiff's 3.99 GPA is greater than the 3.79 average of the acceptees.

28. The 2025 Advisement states that "Applicants are ranked with respect to each other according to their individual qualities as well as on the experiences and diversity that they will contribute to the entering class."

29. Dr. Sapien's rejection letter once again included a reference to the fact that the University lawlessly considers "diversity" in its application process.

30. In February and March 2025, Plaintiff communicated with Dr. Robert Sapien, the Dean of Admissions, regarding his second application. Dr. Sapien told him that his interview and letters of recommendation were considered underwhelming—with these 'soft' factors outweighing his academic credentials.

31. On information and belief, the University uses those soft factors in order to engage in illegal racial discrimination it is no longer allowed to explicitly employ following the Supreme Court's decision *SFFA*.

## CLAIMS FOR RELIEF

32. The University's use of racial preferences in its School of Medicine admissions violates the Equal Protection Clause of the Fourteenth Amendment to the Constitution and Title VI of the Civil Rights Act of 1964.

## COUNT I

### Violation of 42 U.S.C. § 2000d *et seq.*
### (Intentional discrimination on the basis of race)

33. The allegations of the preceding paragraphs are incorporated as though fully set forth herein.

34. The University of New Mexico, acting under color of state law, intentionally discriminated against Plaintiff on the basis of his race, color, or ethnicity in violation of Title VI of the Civil Rights Act of 1964, by employing an admissions policy that intentionally discriminates on the basis of race or ethnicity.

35. Title VI is privately enforceable.

36. Discrimination that violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution constitutes a violation of Title VI when committed by an institution acting under color of state law.

37. The University of New Mexico has intentionally discriminated against Plaintiff, whose qualifications exceed those of the average admittee, and has done so on the basis of his race.

38. Plaintiff has been and will continue to be injured because the University has and will continue to deny him the opportunity to compete for admission on an equal footing with other applicants on the basis of race or ethnicity due to its intentionally discriminatory admissions policies and procedures.

39. Plaintiff is entitled to a declaratory judgment and a permanent injunction because there is no plain, adequate, or speedy remedy at law to prevent the University from continuing to use admissions policies and procedures that

discriminate on the basis of race or ethnicity in violation of Title VI and because the harm Plaintiff will otherwise continue to suffer is irreparable.

40. Plaintiff is entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## COUNT II

### Violation of 42 U.S.C. § 2000d *et seq.*
### (Any use of race as a factor in admissions)

41. The allegations of the preceding paragraphs are incorporated as though fully set forth herein.

42. The University of New Mexico, acting under color of state law, intentionally discriminated against Plaintiff on the basis of his race, color, or ethnicity in violation of Title VI of the Civil Rights Act of 1964, by employing an admissions policy that uses race as a factor in admissions.

43. The Supreme Court's decisions holding that there is a compelling government interest in using race as a factor in admissions decisions in pursuit of "diversity" have been overruled.

44. The University continues to use race as a factor in admissions decisions in pursuit of "diversity" in defiance of the Supreme Court's decision in *SFFA*.

45. The University of New Mexico has intentionally discriminated against Plaintiff, whose qualifications exceed those of the average admittee, and has done so on the basis of his race.

46. Plaintiff has been and will continue to be injured because the University has and will continue to deny him the opportunity to compete for admission on an equal

footing with other applicants on the basis of race or ethnicity due to its intentionally discriminatory admissions policies and procedures.

47. Plaintiff is entitled to a declaratory judgment and a permanent injunction because there is no plain, adequate, or speedy remedy at law to prevent the University from continuing to use admissions policies and procedures that discriminate on the basis of race or ethnicity in violation of Title VI and because the harm Plaintiff will otherwise continue to suffer is irreparable.

48. Plaintiff is entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## COUNT III
### Racial Discrimination – 42 U.S.C. § 1983

49. The preceding paragraphs are incorporated as if set forth herein in their entirety.

50. Defendants discriminated against Plaintiff on the basis of race.

51. In discriminating against Plaintiff, Defendants acted under color of law.

52. Plaintiff is a member of a suspect class and is being unlawfully discriminated against on account of his race.

53. Defendant has an established policy and practice of making admissions decisions on the basis of race, and applied those discriminatory policies and practices to Plaintiff.

54. There is no compelling government interest in making admissions decisions on the basis of race.

55. Defendants' race-based hiring decisions are not narrowly tailored to serve, or substantially related to, any compelling government interest.

**WHEREFORE,** Plaintiff, Michael Jakiche, prays for the following relief as to all counts:

A. A declaratory judgment, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, from the Court that the University's admissions policies and procedures violate Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*;

B. Damages in the amount of both applications fees for the 2024 and 2025 applications, along any other fees, payments, or costs incurred.

C. A permanent injunction prohibiting the University from using race as a factor in future admissions decisions;

D. A permanent injunction requiring the University to re-evaluate Plaintiff's admissions applications without regard for his race or his admission's impact on "diversity";

E. Attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable legal authority; and

F. All other relief this Court finds appropriate and just.

Dated: October 28, 2025

Reilly Stephens
James McQuaid
Liberty Justice Center
7500 Rialto Blvd.
Suite 1-250
Austin, Texas 78735
512-481-4400
rstephens@ljc.org
jmcquaid@ljc.org

and

Carter B. Harrison IV
924 Park Avenue SW, Suite E
Albuquerque, NM 87102
Tel:  (505) 295-3261
Fax:  (505) 341-9340
Email:  carter@harrisonhartlaw.com