**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

MICHAEL JAKICHE,

      Plaintiffs,

v.                                               **2:25-cv-01070-DHU-LF**

BOARD OF REGENTS OF THE
UNIVERSITY OF NEW MEXICO, et al.,

      Defendants.

**<u>MEMORANDUM OPINION AND ORDER</u>**

Before the Court is Defendants Board of Regents of the University of New Mexico (the "University"), Garnett S. Stokes, and Patricia W. Finn's (collectively "Defendants") Motion to Dismiss Plaintiff Michael Jakiche's ("Plaintiff") Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Doc. 21. Plaintiff alleges that the University's "use of racial preferences" in its medical school admissions violates Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d *et seq.*, and 42 U.S.C. § 1983 ("Section 1983"). Doc. 1. Because Plaintiff's Complaint fails to state a claim, the Court grants Defendants' Motion and dismisses Plaintiff's Complaint without prejudice.

## I.     BACKGROUND

Plaintiff, the son of Syrian immigrants, Doc. 1 at ¶ 4, has an outstanding academic record. In March 2023, he took the Medical College Admissions Test ("MCAT") and placed in the 96th percentile of test takers with a score of 519. Doc. 1-3 at 8. In May 2024, Plaintiff graduated from Arizona State University with a bachelor's degree in biophysics and a 3.99 grade point average ("GPA"). *Id.* at 7–8.

1

Plaintiff applied to the University's medical school during the 2023–2024 admissions cycle, Doc. 1 at ¶ 9, noting in his application that he racially identifies as white. Doc. 1-3 at 2. At some point before March 15, 2024, Dr. Robert Sapien ("Dr. Sapien"), the medical school's associate dean for admissions, sent Plaintiff an email highlighting that, "[i]n addition to academic achievement and MCAT scores, the selection of students is also based on the motivation for the study of medicine, problem-solving ability, self-appraisal, ability to relate to people, maturity, breadth of interests and achievement, diversity, professional goals, and the likelihood of serving the health care needs of New Mexico after postgraduate training." Doc. 1-5 at 2.

In May 2024, Plaintiff received a Post Application Advisement Summary ("PAAS") from the medical school's admissions office. Doc. 1-4 at 2. The PAAS stated that (1) for the 2023–2024 admissions cycle, the average accepted MCAT score was 506 and the average accepted GPA was 3.75; and (2) the minimum score to be accepted for that cycle was 88 and the minimum score to make the waitlist was 80.3. *Id.* Because Plaintiff received an admissions score of 86.9, he was placed 23rd on the waitlist. *Id.* The PAAS also contained a chart listing seven potential categories in which an applicant could improve. Two categories, "Increase Clinical Experience" and "Increase Volunteer and Community Service" were marked as "Low Priority," while the other five categories were marked "N/A." *Id.* Moreover, the PAAS noted that Plaintiff did not communicate why he wanted to be a physician and was not able to discuss health care issues. *Id.* The PAAS concluded with the clarification that "[a]pplicants are ranked with respect to each other according to their individual qualities as well as on the experiences and diversity that they will contribute to the entering class." *Id.*

After ultimately being denied admission for the 2023–2024 cycle, Doc. 1 at ¶ 20, Plaintiff applied to the medical school again during the 2024–2025 admissions cycle, *Id.* at ¶ 21, this time

noting in his application that he racially identifies as "Syrian" and "Middle Eastern or North African." Doc. 1-2 at 2. As before, Plaintiff received a PAAS, which stated that (1) for the 2024–2025 admissions cycle, the average accepted MCAT score was 509 and the average accepted GPA was 3.79; and (2) the minimum score to be accepted for that cycle was 88.9 and the minimum score to make the waitlist was 84. Doc. 1-6 at 2. Because Plaintiff received an admissions score of 82, he was not placed on the waitlist. *Id.* Regarding the chart listing potential categories for improvement, "Increase Communication Skills/Professionalism" was marked as "High Priority"; "Increase Clinical Experience," "Increase Volunteer and Community Service," and "Increase Strength of Letters of Recommendations" were marked as "Low Priority"; and the remaining three categories were marked "N/A." *Id.* The PAAS further noted that Plaintiff did not communicate why he wanted to be a physician, was not able to discuss health care issues, had generic letters of recommendation, possessed limited knowledge of New Mexico "health care landscape/issues," and had not shadowed or performed community service since 2023. *Id.* The PAAS concluded with the same ranking clarification as its previous iteration. *Id.* According to Plaintiff, in February and March 2025, he communicated with Dr. Sapien regarding his second application. Doc. 1 at ¶ 30. Dr. Sapien informed Plaintiff that "his interview and letters of recommendation were considered underwhelming" and that his academic credentials did not compensate for this deficiency. *Id.*

Following his second rejection, Plaintiff filed the instant suit, asserting that because the Supreme Court in *Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.,* 600 U.S. 181 (2023) ("*SFFA*"), abrogated the notion that "student body diversity is a compelling state interest that can justify the use of race in university admissions," the correspondence from the University's medical school referencing diversity "is therefore outdated and illegal." Doc. 1 at ¶¶ 18–19. Defendants respond that Plaintiff's reliance on *SFFA* is misplaced, for while both academic

3

institutions in that case admitted to using race-based admission criteria, the University's medical school did not do so in considering Plaintiff's applications for admission. Doc. 21 at 5.

## II.    LEGAL STANDARD

The legal standard in a Rule 12(b)(6) motion is generous to the plaintiff. Their allegations are mostly conclusive: the record is closed and consists only of the complaint, documents attached to or referred to in the complaint, and matters that are judicially noticeable. *Fuqua v. Santa Fe County Sherriff's Office*, 157 F.4th 1288, 1297–98 (10th Cir. 2025). There is no fact-finding, as the Court accepts their well-pleaded factual allegations as true after setting aside mere legal conclusions. And the plaintiff receives the benefit of the doubt: the Court views the facts in the light most favorable to the plaintiff and draws all reasonable inferences in their favor. *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021). Together, these principles erect a relatively high bar for a Rule 12(b)(6) dismissal that leaves room for the Court to decide only one, largely legal question: whether the facts alleged, taken as true, plausibly state a claim upon which relief can be granted. *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011). Plausibility is not probability, simply "more than a sheer possibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.    DISCUSSION

### a.  Title VI (Counts I and II)

Plaintiff alleges Title VI violations only against the University. Doc. 1 at ¶¶ 33–48. Title VI prohibits discrimination based on "race, color, or national origin . . . under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. "The two elements for establishing a cause of action pursuant to Title VI are (1) that there is racial or national origin discrimination and (2) the entity engaging in discrimination is receiving federal financial assistance." *Baker v. Bd. of Regents of Kan.*, 991 F.2d 628, 631 (10th Cir. 1993). The discrimination

4

must be "intentional." *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001); *see also Al Ghareeb v. Bd. of Trs. at Univ. of N. Colorado*, 849 F. App'x 746, 748 (10th Cir. 2021). The parties do not dispute that the University is receiving federal financial assistance. Thus, the only remaining issue is whether the Complaint plausibly alleges that the University intentionally discriminated against Plaintiff.

To determine intentional discrimination under Title VI, the Court borrows the Title VII burden-shifting process from *McDonnell Douglas Corp. v. Green*. *Bryant v. Indep. Sch. Dist. No. I–38 of Garvin Cty., OK*, 334 F.3d 928, 929–30 (10th Cir. 2003); *Vesom v. Atchison Hosp. Ass'n*, 279 F. App'x 624, 635 (10th Cir. 2008) ("When the plaintiff bringing a claim under § 1981 and Title VI offers no direct evidence of discrimination, we apply the burden-shifting scheme of *McDonnell Douglas Corp. v. Green* . . . ."). As explained by the Supreme Court:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for [the adverse treatment]. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. . . . The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

*Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–53 (1981) (internal quotations and citations omitted). However, at the motion to dismiss stage, the plaintiff need only state a *plausible* claim. *Iqbal*, 556 U.S. at 678. Thus, "the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in [the] complaint," though "the elements of each cause of action help to determine whether [plaintiff] has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515 (2002); *Twombly,* 550 U.S. at 570). This also means that "at the motion to dismiss stage, the

5

plaintiff need not rebut a defendant's proffered rationale for termination." *Baum v. Dunmire Prop. Mgmt., Inc.*, 2022 WL 889097, at *3 (D. Colo. Mar. 25, 2022) (citing *Adenowo v. Denver Pub. Sch.*, 2015 WL 4511924, at *3 (D. Colo. June 17, 2015), *report and recommendation adopted*, 2015 WL 4504931 (D. Colo. July 24, 2015) (observing that at the motion to dismiss stage, "a plaintiff is not required to meet the burden-shifting framework, where the initial burden is on a plaintiff to establish a prima facie case of discrimination")). Under this framework, a plaintiff must show, among other things, that he "is a member of a protected class" and that he "was treated differently" from similarly situated individuals. *Buhendwa v. Univ. of Colorado at Boulder*, 214 F. App'x 823, 828 (10th Cir. 2007) (unpublished) (citing *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1277 (10th Cir. 2005)).

Plaintiff's Title VI claims fail in the first instance because he has not alleged that he is a member of a protected class, nor has he provided the Court any factual basis on which to conclude that he is a member of a protected class. While the Complaint states that Plaintiff "is the son of Syrian immigrants," Doc. 1 at ¶ 4, his claims center on discrimination on the basis of race, not national origin. The ambiguity of Plaintiff's protected classification is further muddied by his changes to his racial identity in his consecutive applications to the University's medical school.

Additionally, Plaintiff fails to allege any facts suggesting that the University discriminated against him *because of* his membership in a protected class or that he was treated differently than other similarly situated individuals. Indeed, although Plaintiff alleges that the University's medical school intentionally discriminated against him on the basis of his race by employing an admissions policy that "intentionally discriminates on the basis of race" and "uses race as a factor in admissions," Doc. 1 at ¶¶ 34, 37, 42, he offers no factual allegations in support

6

of that assertion. *See Manolov v. Borough of Manhattan Comm. Coll.*, 952 F. Supp. 2d 522, 532–33 (S.D.N.Y. 2013) (dismissing Title VI claim where plaintiff alleged that professors "intentionally treated all white males . . . in an adverse manner" but failed to allege "any facts suggesting that he or other white males were treated differently than other students" (internal quotation marks and emphasis omitted)); *Fac., Alumni, & Students Opposed to Racial Preferences v. Harvard L. Rev. Ass'n*, 2019 WL 3754023, at *9 (D. Mass. Aug. 8, 2019) ("The complete absence of 'factual material' . . . is fatal to the plaintiffs' claim of discriminatory article selection."). It was incumbent upon Plaintiff to include facts supporting his allegation that the medical school gives and intends to give preferential treatment to applicants of other racial groups of which he does not belong.

The University's commitment to diversity does not alter the Court's conclusion. As an initial matter, the medical school's admissions criteria do not identify a particular type of applicant diversity. "Among the many aspects of diversity, several do not relate to any legally protected classification, such as life experience, political ideology, academic interests, and socioeconomic background." *Doe v. N.Y.U.*, 2024 WL 2847368, at *7 (S.D.N.Y. May 30, 2024). Given that Plaintiff does not meaningfully contest that the admissions criteria do not turn on or require consideration of an applicant's race, and instead evaluate race-neutral considerations such as maturity, professional goals, and the ability to relate to people, *see* Doc. 1-5 at 2, the Court cannot conclude that the medical school's inclusion of diversity in the several factors it considers in admissions gives rise to a plausible inference of unlawful conduct.

Plaintiff's Title VI claims are entirely conclusory and, therefore, fail as a matter of law. *See Nleme v. Walden Univ.*, 2015 WL 9703352, at *7 (D. Minn. Nov. 25, 2015) (dismissing Title VI claim because plaintiff "does not specifically identify himself as

a member of a protected class" and "fails to identify how he was discriminated against based on his membership in [any such] class"), *report and recommendation adopted in relevant part*, 2016 WL 158518 (D. Minn. Jan. 13, 2016). Accordingly, Plaintiff's Title VI claims must be dismissed.

### b. Section 1983 (Count III)

Plaintiff also asserts a racial discrimination claim under Section 1983 against Defendants. This claim is based on the same events underlying Plaintiff's Title VI claims. Doc. 1 at ¶¶ 49–55. "While the elements of [Title VI and Section 1983] claims vary, each requires proof of intentional discrimination." *Okolie v. Paikoff*, 589 F. Supp. 2d 204, 217 (E.D.N.Y. 2008) (collecting cases). As discussed, Plaintiff identifies no record evidence to support an inference of intentional discrimination in connection with his applications to the University's medical school. *See supra* § III.a. Accordingly, Plaintiff's Section 1983 claim must be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED**. Plaintiff's Complaint is dismissed without prejudice.

**IT IS SO ORDERED.**

_____
HONORABLE DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE